NUMBER 13-99-217-CR


COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

_______________________________________________________________


RANDY TAFT , Appellant,


v.



THE STATE OF TEXAS , Appellee.

_______________________________________________________________


On appeal from the 148th District Court

of Nueces County, Texas.

_______________________________________________________________


OPINION ON MOTION FOR REHEARING 



Before Chief Justice Valdez and Justices Dorsey and Kennedy (1)

Opinion by Justice Kennedy



We withdraw the opinion previously entered herein and substitute the following therefor.

Appellant was charged in a two-count indictment with aggravated sexual assault. A jury found him guilty of both counts
and assessed punishment at confinement for seven years.

Appellant's brief brings two points of error. The first is: "The evidence is factually insufficient to sustain the conviction."
The second point alleges that: "The trial court committed egregious error in its punishment charge by erroneously
instructing the jury with regard to parole consequences." The state did not file a brief herein. 

We will summarize the State's evidence. The victim's testimony was that she was a twenty-three year old woman who
worked as a cocktail waitress and roomed with two other young women. On the night of the offense, the victim went with
one of her roommates in her roommate's car to the establishment where she worked and to another nearby establishment
where they joined some other friends to party. At the second establishment, she came in contact with appellant. The victim
and some of her friends alternated between the two establishments until "probably about closing."

The victim's roommate decided to leave with a male friend and told the victim to take her car. The victim drove the car to a
7 Eleven store, and then to the parking lot of her apartment complex. When she stopped the car in the parking lot, the
rapist, who was in the car when it stopped, made the initial contact with the victim when he reached around her neck and
began to choke her. During the course of the next approximately two hours, the rapist choked and beat the victim and
sexually assaulted her. Finally, he tied her up and threatened to kill her if she told anyone what had happened.

The victim, in the first police interview, stated that she did not get a good look at her assailant. She stated, however, that
she believed he might be a man by the name of Randy Taft, but that she wasn't sure. Several days later she told the
investigating officer that it was appellant and at the trial she said she was positive it was him.

Dr. Gene Muller, Ph.D., a psychologist, testified that a person in a traumatic situation can temporarily forget things and
then recall them later. He opined that it would not be unusual that a person would not be able to remember everything that
happened to them immediately after a sexual assault.

In addition to the eye witness identification of appellant, the record reveals the following. The victim testified to her
assailant having told her to say "F___ me harder, Randy" during the ordeal. Several days later, the victim identified
appellant as her assailant in a police lineup. Following the investigating officer's first contact with appellant, he, the
appellant, hurriedly left his place of employment and went to the scene of his original contact with his alleged victim. After
the investigating officer interviewed the potential witnesses at the scene of the original contact, the appellant, who had
hurried to this place, would make contact with each witness immediately following his or her interview. (2)

Appellant did not take the stand, however, he called several witnesses and, as a result of their testimony, plus what had
already been heard by the jury, the following points were made in appellant's defense.

The victim stated that her attacker spoke with a Hispanic accent when, in fact, he is not Hispanic.

A defense witness, who is a medical doctor, disputed the state's psychologist's testimony concerning the revival of a
person's memory over a period of time.

Another defense witness, who worked as a bouncer in several clubs, testified that the victim used him as a body guard
because she feared that her former boyfriend was going to harm her. She told him that her former boyfriend had threatened
to kill her if she aborted her baby, which she said was also her boyfriend's baby.

The owner of the establishment from which both appellant and the victim departed on the night of the assault testified that
appellant was still at the bar for about five minutes after the victim left. On cross-examination, the witness admitted that he
meant "left the bar" when he said the victim left, and that he did not see her drive away from the establishment.

And finally, appellant's brother testified that appellant came home at 2:30 a.m. on the morning in question, which, if true,
would place appellant at home at the time of the assault.

To judge factual sufficiency of the evidence, we view all of the evidence without the prism of "in the light most favorable
to the prosecution" and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust. Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). In conducting a factual
sufficiency review we must defer to the jury's findings. Cainv. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997); Tex.
Code Crim. Proc. art. 36.13 (Vernon 1981). By this standard, we find appellant's first point of error to be without merit.
The totality of the evidence herein is not factually insufficient to prove appellant's guilt beyond a reasonable doubt, and we
overrule the first point of error. 

Point of error two states that the trial court erroneously charged the jury in the punishment phase of the trial. The charge
reads (in pertinent part):

Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible
for parole until the actual time served plus any good conduct time earned equals one-fourth of the sentence imposed or
fifteen years, whichever is less. (3)


Appellant's argument under point two is:

The trial court should have instructed the jury in accordance with Tex. Code Crim. Proc. 37.07, § 4(a).



This section reads, in pertinent part:

Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible
for parole until the actual time served equals one-fourth of the sentence imposed or fifteen years, whichever is less, without
consideration of any good conduct time he may earn.

The record shows that appellant did not object to the charge. In such a situation, the error is reversible only if it causes
actual harm. Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). The potential resulting difference then is
that a jury might tend to assess more years' confinement knowing that a defendant could be released in less time if his
"good time" is figured in than if his "good time" is not figured in. Appellant cites Grigsby v. State, 833 S.W.2d 573, 576
(Tex. App. - Dallas 1992, pet. ref'd) and Myres v. State, 866 S.W.2d 673, 674-5 (Tex. App. - Houston [1st. Dist.] 1993, pet.
ref'd) for the proposition that the State benefits from the statutory parole instruction.

We have considered Grigsby and Myres and neither they, nor any other authority we can find, supports appellant's assertion
that appellant was harmed by the erroneous charge. As a matter of fact, Grigsby holds:

Because appellant objected to the court's not including the parole instruction, we reverse if the error was calculated to injure
appellant's rights. Appellant must have suffered some actual, not theoretical, harm . . . We determine the actual degree of
harm in light of the entire jury charge, the state of the evidence, the argument of counsel, and any other relevant
information revealed by the record as a whole. (4) 

Grigsby, 833 S.W.2d at 576. In addition, we note that the court in the case before us, instructed as follows:

It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is
sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and
parole authorities.

You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to
which the good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the
manner in which the parole law may be applied to this particular defendant.

With regard to a similar complaint, the Houston First District held: 

We do not know what this jury thought on this subject; thus, a finding of egregious harm or any harm, would be utter
speculation. Moreover, we presume the jury followed the judge's instruction and did not consider parole. Myers, 866
S.W.2d at 674.

The facts of this case reveal a brutal, vicious crime. We are not convinced that the error in the court's charge resulted in the
punishment assessed. There was no harm in the erroneous instruction. We overrule appellant's second point of error and
AFFIRM the judgment of the trial court.

NOAH KENNEDY

Retired Justice





Do not publish .

Tex. R. App. P. 47.3(b).



Opinion delivered and filed 

this the 2nd day of August, 2001.



 

1. Retired Justice Noah Kennedy assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to
Tex. Gov't Code Ann. § 74.003 (Vernon 1998).

2. The investigating officer left appellant's employment and went to the scene of appellant's initial contact with the victim.
When he arrived, he noticed appellant's car parked there with the officer's business card on the front seat. The officer
talked to the manager of the establishment to request a private place to interview witnesses. The manager made his own
office available to the officer, and the office was equipped with a closed circuit TV which allowed the officer to scan the
interior of the establishment. From this viewpoint, the officer saw appellant approach each witness following his or her
exit from the office interview. 

3. The law in effect at that time.

4. Grigsby was a case where the trial court omitted any reference to parole in its charge.